## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

**LEON CARLOCK**,

                Plaintiff,            Case No. 19-11969

v.                            Hon. Mark A. Goldsmith

**WAYNE STATE UNIVERSITY**,
and **M. ROY WILSON**, in his individual
and official capacities,

_____/

## DEFENDANTS' *REPLY* IN SUPPORT OF ITS MOTION FOR JUDGMENT
## ON THE PLEADINGS
## PURSUANT TO F.R.Civ.P. 12(C)

The only remaining claim in this case is against President Wilson, in his official capacity, for denial of procedural due process in Count I of his Complaint. Plaintiff does not dispute that President Wilson is entitled to dismissal of all claims against him in his individual capacity and to dismissal of all claims for monetary damages or retroactive relief in his official capacity. But plaintiff argues that *ex parte Young* permits him to seek prospective injunctive relief against President Wilson in his official capacity. Plaintiff's claims, however, must be dismissed because (1) Plaintiff's claim for prospective reinstatement to obtain a hearing is not ripe given that his final hearing has been scheduled for May 14, 2020, that would cure any alleged defects in the prior process; and (2) because President Wilson is entitled to qualified immunity and Plaintiff cannot plausibly plead that any reasonable official addressing the same situation would have known that his or her actions were illegal.

**1. Plaintiff's claims are moot given he is already receiving the process he seeks.**

Assuming everything set forth in Plaintiff's brief is true, Plaintiff's allegation for prospective relief against President Wilson still fails to state a claim upon which relief can be granted because it is undisputed that Plaintiff's final hearing has been scheduled for May 14, 2020 and that hearing will provide all the process Plaintiff alleges he is due.

A nearly identical situation occurred in the case of *Martin v. City of Glasgow, Ky.*, 882 F. Supp. 2d 903, 912 (W.D. Ky. 2012). There, the plaintiff, a former police officer, roughed up a criminal defendant. The department suspended him with pay while it investigated the assault. They decided to terminate him, but not inform him of the charges against him or provide notice of a forthcoming hearing. The police department admitted in the litigation that the initial meeting did not meet Kentucky's statutory procedural due process rights for a police officer. Nonetheless, the department proceeded with the final hearing and provided ample notice to the plaintiff to appear, cross examine witnesses, and present evidence. The police officer was not satisfied and filed a lawsuit claiming failure to provide due process. The officer did not attend the hearing, but the city council heard from witnesses, found him guilty, and terminated him. The court found that the second hearing nullified the police department's initial procedural errors. The court then considered "the dispositive inquiry: whether the proper hearing on May 3 nullifies the Defendants' initial errors on March 16. The Court believes that it does." *Id*. at 912. The *Martin* court reasoned that "any procedural misstep that stymies [a due process] right may be cured by conducting a new hearing in compliance with due process requirements." *Id. citing Batanic v. I.N.S.,* 12 F.3d 662, 667 (7th Cir.1993) and *McKinney v. Pate,* 20 F.3d 1550, 1557 (11th Cir.1994) ("[T]he state may cure a procedural deprivation by providing a later procedural remedy; only when the state

refuses to provide a process sufficient to remedy the procedural deprivation does a constitutional violation actionable under section 1983 arise").

In addition, the *Martin* court considered whether a delay in furnishing the final hearing violated due process and held that it did not. *Id. citing Ritter v. Cohen,* 797 F.2d 119, 124 (3d Cir.1986) (allegation of a twelve-month delay did not violate procedural due process); *United States v. One 1951 Douglas DC–6 Aircraft,* 667 F.2d 502, 503 (6th Cir.1981) (fifteen-month delay between seizure of aircraft and forfeiture action did not implicate procedural due process).

As such, in this case, Plaintiff's claim still fails even assuming Plaintiff's notice of the sexual harassment complaint, his written response, his detailed OEO interview, and his appeal did not constitute a sufficient "initial check" for due process purposes. Because his final hearing is scheduled for May 14, 2020, all the process he claims he is owed will be provided and would cure any alleged shortcomings in his pre-deprivation process.

Moreover, it is undisputed that Plaintiff is entitled to the final May 14 hearing and that Plaintiff's claims for prospective reinstatement would be subject to the outcome of that hearing. Because WSU has a legal obligation not to reinstate Plaintiff to a teaching position given the OEO findings that he engaged in unlawful harassment against a student in his lab, Plaintiff's best case scenario would be

3

exactly what occurred in *Martin*, interim unpaid administrative leave pending his final hearing.[1]  Because that hearing has yet to occur, his claims are not ripe.

## 2.  President Wilson is entitled to qualified immunity.

Even assuming Plaintiff could proceed given the above, he cannot meet his burden to demonstrate that President Wilson in his official capacity is not entitled to qualified immunity.  *Chappell v. Cleveland*, 585 F.3d 901, 907 (6th Cir. 2009).  A university official acting in his official capacity is shielded from liability where "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."  *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)**.**  Or, put differently, that "any reasonable official addressing the same situation would have known that his or her actions were illegal." *Brosseau v. Haugen*, 543 U.S. 194, 199-200 (2004).

Here, as set forth in Defendants' brief, Plaintiff is not entitled to pre-deprivation process at all. *See, e.g., Sutton v. Cleveland Bd. of Educ.,* 958 F.2d 1339, 1349 (6th Cir.1992). Regardless, even assuming Plaintiff were entitled to "pre-

---

[1] Under Title VII, Wayne State has a duty to "take all steps necessary to prevent sexual harassment from occurring" *Faragher v. City of Boca Raton*, 524 U.S. 775, 806, 118 S. Ct. 2275, 2292, 141 L. Ed. 2d 662 (1998); *Jackson v. Quanex Corp.,* 191 F.3d 647, 664 (6th Cir.1999) (holding that reprimanding a supervisor who had a reputation for discriminating against African–Americans was insufficient by itself to prove that the company took reasonable steps to "prevent and correct" the harassment).  The duty also applies under Title IX.  *See Vance v. Spencer Cnty. Pub. Sch. Dist.*, 231 F.3d 253, 260 (6th Cir. 2000); *Doe v. Michigan State Univ., No*. 1:18-CV-390, 2019 WL 5085567, at *5 (W.D. Mich. Aug. 21, 2019).

deprivation" process, he received more than ample process. Plaintiff's response alleges that Plaintiff was never informed of the allegations against him because he was not told that the indisputably terminable offense of sexual harassment might constitute "moral turpitude." Plaintiff, however, cannot plausibly plead that any reasonable decision-maker would think they were acting illegally when terminating Plaintiff for the confirmed sexual harassment findings after providing Plaintiff notice and multiple opportunities to respond to the allegations.

Plaintiff seeks to sidestep these facts by claiming that while he had notice of sexual harassment, he did not know that harassment could constitute "moral turpitude."  This argument fails as a matter of law as sexual harassment has been held to constitute moral turpitude in the academic context. For instance, in *Tonkovich v. Kansas Bd. of Regents*, 159 F.3d 504 (10th Cir. 1998) a professor was terminated after the university "concluded that Professor Tonkovich's behavior constituted sexual harassment in violation of Title VII and Title IX and, as unlawful conduct, constituted moral turpitude under the Faculty Code." *Id*. at 514. The university opinion was undisturbed and taken as fact in the *Tonkovich* decision. Thus, it cannot be said that a reasonable person knew he was acting illegally by finding that confirmed sexual harassment allegations constituted moral turpitude.

Plaintiff's remaining argument is that he was not able to provide his version of events to the "decisionmaker" and thus was not given proper due process. ECF

14, PageID.517.  Plaintiff cites *Duchesne v. Williams*, 849 F.2d 1004, 1005 (6th Cir. 1988) to support this argument.  In *Duchesne*, however, the court unequivocally rejected Plaintiff's argument noting that the word "decisionmaker," is synonymous with "employer" in this context.  *Id.* at 1007-1008.  There, the court noted, "[i]f there were any lingering doubt about the Court's meaning, it is resolved by the footnote immediately following its citation to *Goss v. Lopez.* The footnote specifically states that the Court contemplates a limited *Lopez* -type hearing before the 'employer'" *Id.* at 1007, citing *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 543 n. 8 (1985).

Finally, Plaintiff's response relies on inapposite cases. None of the cited cases related to claims only against a university official in his official capacity and none involved a final hearing that was still pending when the lawsuit was filed.  For instance, Plaintiff cites several district court cases he argues are persuasive, namely *Smock v. Bd. of Regents of Univ. of Michigan*, 353 F. Supp. 3d 651, 654 (E.D. Mich. 2018); *McDaniel v. Princeton City Sch. Dist. Bd. of Educ.*, 72 F. Supp. 2d 874 (S.D. Ohio 1999); and *Frost v. Univ. of Louisville*, 392 F. Supp. 3d 793 (W.D. Ky. 2019). Yet all of these cases are distinguishable.

For instance, in *Frost*, currently on appeal, a non-tenured professor was terminated without any process and told the policies were not triggered allowing for a grievance or appeal.  *Smock* involved sanctions relating to sabbatical and merit pay increases after the university's Office of Institutional Equity (equivalent to OEO in

this case) actually found *no* sexual harassment had occurred. *Smock*, 353 F.Supp.3d at 654. *McDaniel* involved termination of a special education teacher where no pre-disciplinary hearing was held as required by Ohio's teacher tenure statute. Moreover, the school district refused to comply with an arbitrator's grievance determination that the district lacked just cause to terminate the teacher. None of these facts are remotely apposite to this case. Indeed, Plaintiff cannot point to a case with a similar procedural posture to the instant matter. The law is clear that the pre-deprivation process is a mere check and need not be the formal process Plaintiff claims given the availability of the May 2020 final hearing. *Garraghty v. Jordan,* 830 F.2d 1295, 1302 (4th Cir.1987) ("a pre-deprivation proceeding need not be a full evidentiary hearing with witnesses and a neutral decision maker").

As such, in this case it cannot be said, as a matter of law, that President Wilson in his official capacity engaged in acts which so clearly violated established constitutional rights that no reasonable person could believe the conduct was legal. He simply engaged the process for dismissal of tenured faculty that has been a BOG statute since 1962. *See*, https://bog.wayne.edu/code/2-51-01

By: */s/ Brett J. Miller*
Brett J. Miller (P68612)
Butzel Long, PC
150 West Jefferson, Suite 100
Detroit, MI  48226
(313) 225-5316
millerbr@butzel.com

Dated: February 25, 2020            Attorneys for Defendants

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on February 25, 2020, I electronically filed the foregoing paper with the Clerk of the Court using the ECF system which will send notification of such filing to all attorneys

By: */s/ <u>Brett J. Miller</u>*
Brett J. Miller (P68612)
Butzel Long, PC
150 West Jefferson, Suite 100
Detroit, MI  48226
(313) 225-5316
millerbr@butzel.com
Attorneys for Defendants

IDETROIT\000110495\0035\2034094.v3-2/25/20

8